Gary and Susan NAKAMOTO, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Michael J. HARTLEY; Martin F. Goldman; Martin F. Goldman, a California Professional Corporation; Carl E. Press; Michael J. Roberts; Verner, Liipfert, Bernhard, McPherson & Hand, a District of Columbia Corporation, Defendants.

Civ. No. 90–00828 DAE.

United States District Court, D. Hawaii.

March 1, 1991.

Elizabeth Joan Cabraser, Richard M. Heimann, William B. Hirsch, Lieff Cabraser & Heimann, San Francisco, Cal., Paul D. Alston, Paul, Johnson, Alston & Hunt, Honolulu, Hawaii, for plaintiffs.

Mark E. Recktenwald, Goodsill Anderson Quinn & Stifel, Honolulu, Hawaii, for Michael J. Roberts, Verner, Liipfert, Bernhard, McPherson & Hand.

Michael J. Hartley, George W. Ashford, Jr. and James Moore, Ashford & Nakamura, Honolulu, Hawaii, for Martin F. Goldman and Martin F. Goldman, a Cal. Professional Corp.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANT GOLDMAN'S MOTION FOR CONTINUANCE

DAVID A. EZRA, District Judge.

The motion to dismiss of defendants Michael J. Roberts ("Roberts") and Verner, Liipfert, Bernhard, McPherson & Hand ("VLBMH"), and the motion to continue trial of defendants Martin F. Goldman, the individual, and Martin F. Goldman, a Professional Corporation (collectively "Goldman"), came on for hearing before this court on February 25, 1991. William B. Hirsch, Esq. and Louise K.Y. Ing, Esq. appeared for plaintiffs Gary and Susan Nakamoto ("the Nakamotos" or "plaintiffs"); Mark E. Recktenwald, Esq. and Martin Anderson, Esq. appeared on behalf of defendants Roberts and VLBMH; and James R. Moore, Esq. appeared for defendant Goldman.[1] Defendants Carl E. Press ("Press") and Michael J. Hartley ("Hartley"), who is *pro se*, did not appear. Robert F. Miller, Esq. appeared on behalf of Wyman W.C. Lai, Air Hawaii's bankruptcy trustee and the plaintiff in *Lai v. Anthony*, Civ. No. 88–00565 (D.Haw.), which has been consolidated with this case. *See* Order Granting Plaintiffs' Joint Motion For Consolidation Of Actions, filed by Senior Judge Martin Pence on February 19, 1991.

The court having reviewed the motions and the memoranda filed in support thereof and in opposition thereto, having heard oral argument of counsel, and being fully advised as to the premises herein, GRANTS IN PART and DENIES IN PART the motion to dismiss and GRANTS the motion to continue trial.

## BACKGROUND

This securities fraud case arises out of the sale of airline ticket coupon books by the now defunct Air Hawaii. Each coupon book contained four (4) round-trip tickets for travel between Hawaii and either San Francisco or Los Angeles, as well as twenty (20) freely transferable one-way tickets. On November 19, 1985, the Nakamotos purchased one of these coupon books for $1,400.00.

Defendants Hartley, Press, and Goldman organized and operated Air Hawaii through Airwest International, Inc., a Nevada corporation wholly owned by N & C, Inc., a Hawaii corporation. Air Hawaii began flying on November 22, 1985 and remained in business for less than three months, ceasing to fly on February 19, 1986 when its two planes were repossessed. After a

---

1. Mr. Moore also represents defendant Carl E. Press in the companion case of *Lai v. Anthony*. Mr. Moore noted expressly, however, that he did not appear for Mr. Press with respect to the instant motions to dismiss and to continue, which relate solely to the *Nakamoto* case. Mr. Moore has refused to accept service of the *Nakamoto* complaint on behalf of Mr. Press, who is a citizen of West Germany.

brief attempt to secure financing through the sale of additional coupon books, Air Hawaii filed for bankruptcy on March 14, 1986.

Air Hawaii's bankruptcy trustee filed a complaint on March 14, 1986 against the same defendants involved in the instant suit. *See Lai v. Anthony,* Civ. No. 88–00032 (D.Haw.). In addition to the claims he brought on behalf of Air Hawaii, the debtor corporation, the trustee appeared to assert claims on behalf of coupon book purchasers. The defendants moved to dismiss the coupon book claims on the ground that the trustee lacked standing to represent the purchasers' interests, and Senior Judge Martin Pence granted that motion on July 19, 1989. *See* Order Denying in Part and Granting in Part Roberts' and VLBMH's Motion to Dismiss at 12. As noted above, the trustee's action has been consolidated with the Nakamotos' suit.[2]

Defendant Roberts is an attorney with the Washington, D.C. firm of VLBMH. He represented Air Hawaii in its efforts to obtain necessary licenses from the Department of Transportation ("DOT") and a special exemption that allowed Air Hawaii to sell the coupon books before commencing flight operations.[3] Defendants Hartley, Press, and Goldman were stockholders and directors of N & C, Inc., Air Hawaii's parent corporation, during the time that the events giving rise to this suit transpired. Plaintiffs allege that Hartley, Press, and Goldman financed, operated, and controlled Air Hawaii through their positions with N & C, Inc.

The Nakamotos filed their class action complaint on November 21, 1990. They allege that Air Hawaii failed because it was undercapitalized, maintaining that Hartley, Press, and Goldman intended to cover the airline's start-up and operations costs with the coupon book proceeds, thereby risking coupon book purchasers' money rather than their own. They also say defendants misrepresented to potential coupon book purchasers the extent of Air Hawaii's capitalization and the fact that Air Hawaii had no connection to the bankrupt Hawaii Express or its principals, Hartley and Press. *See* footnote 3 *supra.* The Nakamotos purport to represent a class of several thousand plaintiffs who purchased coupon books between October 1, 1985 and February 19, 1986.[4]

The Nakamotos assert seven claims for relief.[5] They plead causes of action under: (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"); (2) the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("SEA"); (3) the Hawaii Uniform Securities Act, H.R.S. §§ 485–20 and 485–25; (4) the Hawaii antitrust statute, H.R.S. § 480–2; (5) the Hawaii common law of fraud; (6) the Hawaii common law of negligent misrepresentation;[6] and (7) the Hawaii civil RICO statute, H.R.S. §§ 842–1, *et seq.*

Roberts and VLBMH argue that plaintiffs' first (federal RICO), second (SEA), third (Hawaii Securities Act), fifth (Hawaii

---

**2.** There is a third related suit. In *First Interstate Bank of Hawaii v. Hartley, et al.,* Civ. No. 87–1243 (D.Haw.), the bank sued Hartley and the other defendants to recover on the claims of plaintiffs who used a credit card to buy a ticket coupon book (the so called "chargeback" cases).

**3.** Prior to representing Air Hawaii, Roberts and VLBMH represented defendants Hartley and Press in matters relating to other unsuccessful airline ventures. These included Hawaii Express, Hawaiian Pacific Airlines, Inc., and PSA Hawaii Express. Plaintiffs' Memorandum in Opposition at 3.

**4.** Between October 1, 1985 and January 8, 1986, Air Hawaii sold approximately 2,700 ticket coupon books at $1,400.00 per book to persons in Hawaii. Complaint at ¶ 89. Between Novem-

ber 30, 1985 and February 19, 1986, Air Hawaii sold approximately 9,100 ticket coupon books at $1,200.00 per book to persons in California and other mainland states. Complaint at ¶ 91.

**5.** Originally, plaintiffs asserted eight claims. However, they have since withdrawn their fourth claim for relief, *see* Complaint at 54, which sought damages under California Corporations Code § 25504. *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 5, n. 1. Plaintiffs confirmed at oral argument on this motion that they have abandoned the California law claim.

**6.** Plaintiffs' bring their negligent misrepresentation claim, their seventh claim for relief, against all defendants *except* Roberts and VLBMH. *See* Complaint at 58.

antitrust statute), and eighth (Hawaii RICO) claims for relief are barred by the applicable statutes of limitation. They move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs counter that the various limitations periods were tolled by either (1) the defendants' fraudulent concealment of plaintiffs' cause of action or (2) the filing of *Lai v. Anthony* against these same defendants by the Air Hawaii bankruptcy trustee.

Roberts and VLBMH move to dismiss plaintiffs' sixth claim for relief (fraud) for failure to plead with the particularity that Federal Rule of Civil Procedure 9(b) requires. Roberts and VLBMH do not address plaintiffs' seventh claim for relief (negligent misrepresentation) because they are specifically exempted from liability on that claim. *See* footnote 6, *supra.* Defendants Hartley and Goldman have joined in the motion to dismiss filed by Roberts and VLBMH. However, they have not filed supporting legal memoranda or offered any additional argument to support dismissal of the complaint as against them specifically. Defendant Press did not file a joinder.

Also before the court is defendant Goldman's motion for a six-month continuance of the trial currently set to begin April 2, 1991. Goldman notes that substantial discovery remains to be conducted in the *Nakamoto* case, and he points out that the hearing on plaintiffs' motion for class certification is currently set for just one week before trial. Plaintiffs have agreed to a four-month continuance.

## DISCUSSION

### I. *Standard For Dismissal Under Rule 12(b)(6)*

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on the motion, the court accepts the complaint's allegations as true and construes those allegations in the light most favorable to plaintiffs. *Baker v. McNeil Island Corrections Ctr.,* 859 F.2d 124, 127 (9th Cir.1988). Where a party bases its motion to dismiss on the running of the applicable

statutes of limitation, this court may grant the motion only if the assertions in the complaint will not permit plaintiffs to prove that the statute was tolled. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980).

### II. *First Claim For Relief—Federal RICO*

#### A. Whether The Claim Is Time–Barred

■ A four-year statute of limitation governs civil federal RICO actions. *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The limitations period begins to run when the plaintiff knows or should know of the injury that forms the basis for the action. *Stitt v. Williams,* 919 F.2d 516, 525 (9th Cir.1990).

Plaintiffs appear to concede that the four-year limitations period began to run no later than March 14, 1986, when Air Hawaii filed for bankruptcy protection. *See* Complaint at 42, ¶ 103. By then, plaintiffs clearly had notice that the airline had been capitalized inadequately from the start. Plaintiffs filed their complaint on November 21, 1990, more than four years and eight months after the limitations period began to run. Thus, plaintiffs' federal RICO claim is time-barred unless otherwise tolled.

#### B. Whether The Limitations Period Was Tolled

■ Plaintiffs contend the four-year limitations period was tolled during the sixteen months between March 14, 1988, when the trustee filed his complaint in *Lai v. Anthony,* and July 19, 1989, when Senior Judge Pence issued his order finding the trustee lacked standing to assert claims on behalf of injured coupon book purchasers like the Nakamotos. Plaintiffs say the trustee's action afforded defendants adequate notice of the coupon book purchasers' claims, despite the fact that the court ultimately found the trustee lacked standing to assert those claims. Finally, plaintiffs argue that because they reasonably believed the trustee acted to protect their

interests, this court cannot find that they slept on their rights during the sixteen months preceding the court's ruling on standing.

The Supreme Court has held that the filing of a *class* action tolls the applicable statute of limitation as to all asserted members of the class in the event class certification is eventually denied. *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 2396, 76 L.Ed.2d 628 (1983). Plaintiffs recognize that the trustee's action here was not a *class* action, and thus not within the ambit of *Crown, Cork & Seal,* where the Court's specific language speaks exclusively in terms of class actions. They ask the court to extend *Crown, Cork & Seal* to the situation here, arguing the same equity principles that governed the Court's decision in that case apply equally to the facts at bar.

Outside the class action context, the Ninth Circuit has refused to toll a federal statute of limitation during the pendency of a state court action involving the same parties. *Pace Industries, Inc. v. Three Phoenix Co.,* 813 F.2d 234, 241 (9th Cir. 1987). In *Pace,* the Ninth Circuit cited with approval a First Circuit case holding that " 'to toll the statute, the action must be the case at bar, and not merely a somewhat related action arising from the same facts.' " *Id.* (quoting *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 320 (1st Cir.1978)).

The instant case is more closely analogous to *Pace* and *Ramirez* than to *Crown, Cork & Seal.* The trustee's action arose from the same facts as the present class action suit, but it was not the same case. The plaintiffs in *Crown, Cork & Seal* would automatically have been parties to the original suit, but for the court's refusal to grant class certification. Unlike those plaintiffs, the Nakamotos and the individuals they hope to represent would not have been parties to the trustee's suit unless they had chosen to intervene.

After the court ruled that the trustee lacked standing to assert plaintiffs' interests, plaintiffs delayed fifteen (15) months before bringing their own class action complaint. That delay negates any claim that plaintiffs relied on the filing of the trustee's action in failing to timely bring their suit. Given the fifteen-month delay and the Ninth Circuit's holding in *Pace,* this court must conclude as a matter of law that equitable tolling of the limitations period during the pendency of the trustee's action is unwarranted. Accordingly, the court dismisses plaintiffs' first cause of action under RICO for failure to sue within the four-year limitations period. The dismissal applies to all defendants.

### III. *Second Claim For Relief—Securities Exchange Act*

■ For purposes of determining whether plaintiffs' claim under the SEA is time-barred, this court assumes that the ticket coupon books are "securities" within the meaning of that act. *See* 15 U.S.C. § 78c(a)(10) (1981 & Supp.1990). Both Judge Kay and Judge Pence so found in ruling on the two related cases of *Lai v. Anthony* and *First Interstate Bank of Hawaii v. Hartley, et al.* Defendants have not moved to dismiss on the ground that the coupon books are not securities.

Plaintiffs sue under Rule 10b–5 of the Rules and Regulations of the Exchange Act, 17 C.F.R. § 240.10b–5 (1990). This court has found that the six-year statute of limitation provided in H.R.S. § 657–1(4) governs actions brought pursuant to Rule 10b–5. *Cunha v. Ward Foods, Inc.,* 501 F.Supp. 830, 837 (D.Haw.1980).

Defendants argue that *Agency Holding,* in which the Supreme Court held a uniform federal statute of limitation applicable to *RICO* actions, implicitly overruled *Cunha.* They point out that since the Supreme Court decided *Agency Holding,* the Second, Third, and Seventh Circuits have reconsidered their previous application of state statutes of limitation to Rule 10b–5 claims.[7]

---

7. *See Ceres Partners v. GEL Assocs.,* 918 F.2d 349 (2d Cir.1990); *In re Data Access Systems Securities Litig.,* 843 F.2d 1537 (3d Cir.), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990).

Finally, they note that the Court recently granted *certiorari* on a Ninth Circuit case that applied a state statute of limitation to a Rule 10b–5 claim. *See* —— U.S. ——, 111 S.Ct. 242, 112 L.Ed.2d 201 (1990) (*granting cert.* in *Lampf Pleva Lipkind Prupis & Pitigrow v. Gilbertson ("Lampf")).*

Defendant's argument is without merit. The Ninth Circuit has ruled expressly that *Agency Holding* does not require a reversal of its view that analogous state statutes of limitation apply to Rule 10b–5 claims. *Nesbit v. McNeil*, 896 F.2d 380, 384 (9th Cir.1990), *amd'd* and *reh'g denied en banc*, 1990 US App LEXIS 7906 (9th Cir.1990). In *Nesbit*, the court of appeals went on to hold that even if it were to abandon that position and follow the Second, Third, and Seventh Circuits, its decision to do so would not apply retroactively to pending cases. *Id.*

Defendants ask this court to ignore *Nesbit* and follow the Second, Third, and Seventh Circuits merely because the Supreme Court has granted *certiorari* in a Ninth Circuit case that followed the *Nesbit* approach. However, the Ninth Circuit reaffirmed the application of state limitations periods to federal securities fraud claims in a case decided after the Supreme Court granted *certiorari* in *Lampf. See Stitt*, 919 F.2d at 522. The Ninth Circuit is not alone in refusing to extend *Agency Holding* to Rule 10b–5 claims. *See* Plaintiffs' Memorandum in Opposition at 8, n. 3 (citing cases from the First, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits that have refused to extend *Agency Holding* to federal securities law claims).

The Ninth Circuit, whose decisions this court must follow, has made its position clear. The Supreme Court, in deciding *Lampf*, may ultimately invalidate that position. Pending such ruling, however, it is the law of this circuit and this district that the analogous state statute of limitation governs Rule 10b–5 actions. For claims arising in Hawaii, that state statute is H.R.S. § 657–1(4), which sets a six-year limitations period. *Cunha*, 501 F.Supp. at 837. Even assuming, as defendants suggest, that the clock began to run on Febru-

ary 19, 1986, when Air Hawaii ceased operations, plaintiffs filed their complaint well within the six-year period. Accordingly, the court denies the motion of all defendants to dismiss plaintiffs' second claim for relief under the SEA.

IV. *Third Claim For Relief—H.R.S. §§ 485–20 and 485–25: Hawaii Uniform Securities Act*

In addition to suing under the SEA, plaintiffs sue for securities fraud under state law. *See* H.R.S. § 485–25. The applicable statute of limitations for claims brought under section 485–25 is the one set forth in H.R.S. § 485–20. *Bulgo v. Munoz*, 853 F.2d 710, 715 (9th Cir.1988). Section 485–20(a) provides:

... no action shall be brought for the recovery of the purchase price after five years from the date of the sale or after two years from the discovery of facts constituting the violations, but in any event after seven years from the date of the sale.

Plaintiffs filed their complaint five years and two days from the date they bought their coupon book. Thus, they fail to come within the first limitations threshold established by section 485–20. They have also failed to meet the second threshold; they filed their complaint four years and eight months after Air Hawaii filed for bankruptcy, the point at which they gained notice of the alleged fraud.

Plaintiffs apparently concede they cannot meet the requirements of section 485–20, as they do not debate the point. Plaintiffs' Memorandum in Opposition at 20. They argue instead that because defendants fraudulently concealed their unlawful activities, the six-year statute of limitation found at H.R.S. § 657–20 applies. Under section 657–20, when any person fraudulently conceals from a plaintiff the existence of the plaintiff's cause of action or the identity of any person who is liable, the plaintiff may bring his claim any time within six years from the date he discovers or should have discovered the existence of the cause of action or the identity of the person liable. Section 657–20 applies to actions

brought pursuant to section 485–25. *See Cunha,* 501 F.Supp. at 836.

To invoke section 657–20, plaintiffs must show that defendants took affirmative steps to conceal a cause of action that defendants knew about. *Au v. Au,* 63 Haw. 210, 215–16, 626 P.2d 173 (1981). The acts of concealment may involve a plan to prevent inquiry or escape investigation or a design to hinder the acquisition of information that would assist the plaintiff in discovering his cause of action. *Id.* at 215, 626 P.2d 173 (citations omitted). The mere denial of liability does not amount to fraudulent concealment.

### A. Defendants Hartley, Press, and Goldman

█ The Nakamotos allege that between February 19, 1986, when Air Hawaii stopped flying, and March 14, 1986, when the airline filed for bankruptcy, Hartley, Press, and Goldman fraudulently concealed the Nakamotos' cause of action by selling the airline to one Raymond Gray ("Gray"). Plaintiffs' Memorandum in Opposition at 21; Complaint at ¶¶ 99–101. They insist defendants sold the airline to Gray in order to avoid filing for bankruptcy, which defendants knew would cause "governmental authorities, creditors, ticket purchasers and the media" to scrutinize Air Hawaii's financial records. Complaint at ¶ 99. Finally, plaintiffs claim that after selling their interest in Air Hawaii to Gray, Press and Goldman assisted Gray in his attempts to revive the airline by selling additional coupon books. Complaint at ¶ 101.

Plaintiffs also contend that defendants fraudulently concealed the persons responsible for the Air Hawaii coupon book fraud. They say that in press releases and other promotional materials, defendants misled them by failing to reveal: (1) that Press and Goldman were directors and stockholders of N & C, Inc. and Airwest, Complaint at ¶ 93(b)–(e); and (2) that Hartley had no connection with the failed Hawaii Express venture, which apparently employed a cou-

pon book scheme nearly identical to the one used to finance Air Hawaii. Complaint at ¶¶ 92(c) and (d).

On a motion to dismiss, this court may rule in favor of the moving party only if the non-moving party can muster no facts in support of its claim. As stated in the two preceding paragraphs, plaintiffs have clearly stated facts, which this court must accept as true, showing defendants Hartley, Press, and Goldman took *affirmative* steps to prevent the Nakamotos from discovering both that they had been defrauded and that Press, Goldman, and Hartley were the primary players in the coupon book scheme.

Press and Goldman are mentioned by name at ¶ 101 of the Complaint, and as the primary stockholders of N & C, Inc. and Airwest, they clearly engineered the sale to Gray. *See* Complaint at ¶¶ 14–17. The complaint further alleges that Hartley exercised day-to-day control over Air Hawaii and that at all relevant times he was active in its management. *See* Complaint at ¶¶ 13, 83(j), and 95.[8] It is clear from the complaint that Hartley actively promoted coupon book sales months after Air Hawaii announced to the public that he had resigned his position with the airline and sold his shares. *See* Complaint at ¶¶ 82 and 95.

Therefore, as to defendants Hartley, Press, and Goldman, plaintiffs have made a showing of affirmative fraudulent concealment sufficient to invoke the six-year limitations period of section 657–20. Because they filed their complaint within six years of the date Air Hawaii filed for bankruptcy, the event that should have alerted them to the existence of their cause of action, that complaint is timely with respect to their claims against Hartley, Press, and Goldman.

### B. Defendants Roberts and VLBMH

█ As stated in *Au v. Au,* the doctrine of fraudulent concealment does not operate

---

**8.** Originally, Hartley was the majority stockholder of N & C, Inc., the corporate shell through which Hartley, Press, and Goldman ran Air Hawaii. Complaint at ¶¶ 62–63. It is un-

clear from the complaint whether Hartley sold his interest in N & C, Inc. prior to the February 1986 sale to Gray. *See* Complaint at ¶¶ 72, 82, 83(j), and 85(o).

unless the actions taken to conceal a known cause of action are "taken by a liable party." *Id.* There is nothing in the complaint to indicate that either Roberts or VLBMH participated personally in the decision to sell Air Hawaii to Gray so as to avoid baring the airline's internal financial affairs to public scrutiny.

There is also nothing to show that Roberts or VLBMH made misrepresentations or material omissions to the *public.* The complaint alleges that Roberts and VLBMH misled the *DOT* in order to obtain a fitness certificate, a certificate for interstate and overseas transportation, and an exemption that permitted the airline to sell coupon books prior to commencing flight service. Complaint at ¶¶ 83–86. In their Memorandum in Opposition at page 21, plaintiffs assert that "Roberts and the other defendants intentionally acted to prevent plaintiffs and others from examining Air Hawaii's business records to determine the reasons the airline failed." However, they do not provide specific facts linking Roberts and VLBMH to the fraudulent concealment.

Accordingly, the Nakamotos' claim under section 485–25 against Roberts and VLBMH is governed by the five year/two year statute of limitation set forth in section 485–20. Applying that limitations period, their state securities fraud claim against Roberts and VLBMH is time-barred, and the court dismisses plaintiffs' third cause of action as against those two defendants.

V. *Fifth Claim For Relief—H.R.S. § 480–2: Unfair And Deceptive Trade Practices*

■ Plaintiffs state their fifth cause of action for unfair and deceptive trade practices under H.R.S. § 480–2. They base their claim on the misrepresentations and omissions alleged at ¶¶ 83, 85, 92, and 93 of the complaint.

Defendants point out, Memorandum in Support at 20, and plaintiffs concede, Memorandum in Opposition at 20, n. 6, that section 480–2 does not apply to claims arising from securities transactions. *Spinner*

*Corp. v. Princeville Development Corp.,* 849 F.2d 388, 391 (9th Cir.1988). Accordingly, the court dismisses the Nakamotos' fifth claim for relief as against all defendants.

VI. *Sixth Claim For Relief—Common Law Fraud*

The alleged misrepresentations and material omissions described at ¶¶ 83, 85, 92, and 93 also form the basis for the Nakamotos' common law fraud claim. Defendants move to dismiss the fraud claim for failure to comply with the particularity requirements of Rule 9(b).

A. Defendants Roberts and VLBMH

Roberts and VLBMH say plaintiffs fail to pinpoint precisely which of Roberts' alleged misstatements they relied upon in purchasing their coupon book. The gist of plaintiffs' argument is that even though Roberts and VLBMH did not make misrepresentations directly to plaintiffs, the overall scheme of Hartley, Press, and Goldman could not have succeeded without the misrepresentations that Roberts and VLBMH made to the DOT. In other words, *but for* the misrepresentations and omissions that Roberts made to the DOT, *see* Complaint at ¶¶ 83–85, Hartley, Press, and Goldman would not have obtained permission to sell the coupon books and plaintiffs would not have lost $1,400.00. *See* Complaint at ¶ 86. Plaintiffs do not aver that they ever spoke with Roberts directly prior to purchasing their coupon books or that they read any of the documents submitted to the DOT.

Rule 9(b) requires particularity in pleading the circumstances of alleged fraud. *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973). Justifiable reliance is an element of fraud under Hawaii law. *See Bulgo,* 853 F.2d at 716; *Eastern Star, Inc. v. Union Bldg. Materials Corp.,* 6 Haw.App. 125, 140, 712 P.2d 1148, 1158 (1985). Like the other elements of fraud, justifiable reliance must be pled with particularity. *Learning Works, Inc. v. The Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir.1987).

Plaintiffs have not pled with particularity that they relied on Roberts' misrepresentations and omissions to the DOT because they cannot legitimately make any such claim. Accordingly, Roberts' motion to dismiss plaintiffs' fraud claim is more appropriately considered under Rule 12(b)(6) than under Rule 9(b).

Plaintiffs charge essentially that Roberts and VLBMH aided and abetted the other three defendants in perpetrating a fraud. The Ninth Circuit recognizes both coconspirator liability and aider and abettor liability in the context of federal civil securities fraud claims under Rule 10b–5 of the SEA. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1299 (9th Cir.1982); *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 640–41 (C.D.Cal.1983). However, Hawaii courts have given no indication that on a fraud claim brought under Hawaii common law, a defendant may be held liable for aiding and abetting a fraud through the utterance of misrepresentations to a third person, upon which the plaintiff does not directly rely. *Cf. Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 452–53 (7th Cir.) (court unaware that any state's common law of fraud recognizes tort of aiding and abetting), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

This court has found that when a person injects himself into a business transaction, "he incurs a duty to disclose all material information necessary to prevent representations he makes, *either directly or indirectly*, from misleading other parties to the transaction." *National Consumer Co-op. Bank v. Madden*, 737 F.Supp. 1108, 1112 (D.Haw.1990). In *Madden*, however, the misstatements and material omissions were made directly to the plaintiff. Such is not the case here with respect to Roberts' alleged misrepresentations to the DOT.

Hawaii law requires not only that the defendant make a misrepresentation, but also that the plaintiff rely on that particular misrepresentation. *Eastern Star, Inc.*,

6 Haw.App. at 140, 712 P.2d 1148; *Wolfer v. Mutual Life Ins. Co. of New York*, 3 Haw.App. 65, 69, 641 P.2d 1349 (1982). Plaintiffs can allege no set of facts showing that they relied on the statements Roberts made to the DOT. The "but for" connection between those statements and the overall coupon book scheme is insufficient to establish Roberts' liability for fraud under Hawaii's common law. Therefore, the court grants the motion of Roberts and VLBMH to dismiss plaintiffs' sixth claim for relief.

**B. Defendants Hartley, Press, and Goldman**

The motion to dismiss of Hartley, Press, and Goldman may be analyzed appropriately under Rule 9(b). That is the rule under which these three defendants move for dismissal in their respective joinders.[9] The complaint meets the requirements of Rule 9(b) with respect to Hartley, Press, and Goldman. It provides a detailed description of statements made directly to purchasers like the Nakamotos through advertising and the news media. Complaint at ¶¶ 93–94. It also sets forth facts which, if believed, show that these statements were false or misleading. Plaintiffs allege they relied on these statements. Complaint at ¶ 135.

Rule 9(b) does not require the pleading of detailed evidentiary matter. *Walling*, 476 F.2d at 397. Where the plaintiff alleges the defendant made fraudulent representations in connection with a sale of securities, the complaint is sufficient under Rule 9(b) if it identifies the circumstances so that the defendant can prepare an answer. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989). A statement of the time, place, and nature of the alleged fraudulent activities suffices. *Id.* And where the offense involves corporate fraud, the complaint need not attribute particular fraudulent statements or acts to particular defendants. *Id.*

---

**9.** Press' name was not included on the joinder filed by defendant Goldman. As noted earlier, Press and Goldman have shared the same attorney, Mr. Moore, in the related *Lai* and *First* *Interstate* cases. Because the arguments Press would make on the motion to dismiss are the same ones asserted by the other defendants, the court includes Press in its ruling on the motion.

The court finds that with respect to Hartley, Press, and Goldman, plaintiffs' 62-page complaint goes well beyond the minimum required to satisfy Rule 9(b). Plaintiffs not only provide a general history of these three defendants and how they became involved with Air Hawaii, *see* Complaint at pp. 5–7, 12–22, they offer many specific examples of statements made to the public, and they give the dates on which those statements were made. Complaint at pp. 36–40. Accordingly, the court finds the complaint meets the particularity requirement of Rule 9(b) with respect to Hartley, Press, and Goldman, and the court denies the motion of those three defendants to dismiss plaintiffs' sixth claim for relief.

## VII. *Seventh Claim For Relief—Negligent Misrepresentation*

Defendants Roberts and VLBMH have not moved to dismiss the negligent misrepresentation claim because they are not named in it. None of the other defendants have briefed the merits of any such motion to dismiss, having filed bare joinders to the motion of Roberts and VLBMH. Accordingly, there is no basis upon which the court can address the negligent misrepresentation claim, and it therefore will not dismiss that claim.

## VIII. *Eighth Claim For Relief—H.R.S. § 842–8(c)*

The Nakamotos' final claim derives from Hawaii's civil RICO statute, H.R.S. § 842–1, *et seq.* Defendants argue the Hawaii RICO claim is time-barred because suit on the predicate acts supporting the claim is time-barred. Defendants' Memorandum in Support at 6. Those predicate acts are the state securities law violations that plaintiffs allege in their third claim for relief. The Nakamotos assert that these violations of state securities law satisfy the "racketeering activity" requirement of section 842–2. Complaint at ¶ 149.

The court has ruled, in section IV.A above, that plaintiffs' state securities law claims under H.R.S. § 485–25 are *not* time-barred as against defendants Hartley, Press, and Goldman. Accordingly, the court will not dismiss plaintiffs' eighth claim for relief as against those three defendants on the ground that suit on the predicate acts is time barred.

■ In section IV.B above, this court did rule that plaintiffs' securities law claims under section 485–25 *are* time-barred as against defendants Roberts and VLBMH. Nevertheless, that finding does not require dismissal of plaintiffs' Hawaii RICO claims. In determining whether a federal RICO claim is timely, this court applies the RICO statute of limitations to the securities law violations that constitute the predicate acts. *Stitt*, 919 F.2d at 525. The RICO statute begins to run when the plaintiff knows or should know of the injury giving rise to the RICO claim. *Id.* Hawaii courts follow a similar approach. Under Hawaii law, where two or more causes of action arise from a single transaction or series of events, different statutes of limitation apply to the separate claims. *See Au*, 63 Haw. at 214, 626 P.2d 173.

■ Hawaii's RICO statute does not itself contain a statute of limitation. Therefore, the six-year statute codified at H.R.S. § 657–1(4) applies. *See Cunha*, 501 F.Supp. at 837; *see also, McCarthy v. Pacific Loan, Inc.*, 629 F.Supp. 1102, 1107 (D.Haw.) (pre *Agency Holding* case that holds section 657–1(4) governs federal civil RICO claims), *app. dism'd*, 789 F.2d 921 (9th Cir.1986).

■ As noted above in connection with plaintiffs' other claims, defendants argue plaintiffs should have known about their injury no later than either February 19, 1986, when Air Hawaii stopped flying, or March 14, 1986, when the airline filed for bandruptcy. Plaintiffs' filed their complaint less than six years from the earlier date, and their Hawaii RICO claim is therefore timely. The court denies the motion of all defendants to dismiss plaintiffs' eighth claim for relief under section 842–8(c).

## IX. *Motion to Continue Trial*

Defendant Goldman moves to continue for six months the trial currently set for

April 2, 1991. The Nakamotos and the trustee, plaintiff in *Lai v. Anthony,* oppose any continuance greater than four months.

The court finds that a continuance to August 20, 1991, which takes into account the prior commitments of counsel for all parties, is warranted. Plaintiffs' motion for class certification is pending before the court and will not be heard until March 25, 1991, just one week before the current trial date of April 2. Should the court decide to certify some or all of plaintiffs' remaining claims as a class action, defendants obviously cannot prepare a class action defense in one week.

Moreover, while many of the issues the Nakamotos raise were first brought to defendants' notice three years ago when the trustee filed *Lai v. Anthony,* the Nakamotos do present some new issues upon which defendants have not yet had adequate discovery. Therefore, in addition to continuing the trial, the court will extend the discovery cutoff in *Nakamoto v. Hartley* to allow defendants to take necessary depositions and obtain documents. This discovery extension does not apply to *First Interstate Bank of Hawaii v. Hartley, et al.,* which has apparently resolved in any event, or to *Lai v. Anthony.*

The court cautions defendants to conduct discovery in good faith and expressly directs them not to incur unnecessary costs to plaintiffs by redeposing persons on issues already covered during depositions taken in connection with either *Lai* or *First Interstate.* The court further instructs defendants not to renew requests for documents already in their possession as a result of prior *Lai* and *First Interstate* discovery. Plaintiffs may bring a motion to quash any discovery that they reasonably feel is duplicative or intended to unnecessarily delay the litigation.

## CONCLUSION

Therefore, the court: (1) GRANTS the motion of all defendants to dismiss plaintiffs' first claim for relief under the federal RICO statute; (2) DENIES the motion of all defendants to dismiss plaintiffs' second claim for relief under the SEA; (3) GRANTS the motion of defendants Roberts and VLBMH and DENIES the motion of defendants Hartley, Press, and Goldman to dismiss plaintiffs' third claim for relief under H.R.S. § 485–25; (4) notes that plaintiffs have withdrawn their fourth claim for relief under California law; (5) GRANTS the motion of all defendants to dismiss plaintiffs' fifth claim for relief under H.R.S. § 480–2; (6) GRANTS the motion of defendants Roberts and VLBMH and DENIES the motion of defendants Hartley, Press, and Goldman to dismiss plaintiffs' sixth claim for relief under Hawaii's common law of fraud; (7) notes that no defendant has moved to dismiss plaintiffs' seventh claim for relief under the common law of negligent misrepresentation; and (8) DENIES the motion of all defendants to dismiss plaintiffs' eighth claim for relief under H.R.S. § 842–1, et seq.

Further, the court GRANTS defendant Goldman's motion for a continuance. The court vacates the trial date of April 2, 1991 and resets trial for August 20, 1991. The court adjusts the discovery deadlines with respect to *Nakamoto v. Hartley* as indicated above.

IT IS SO ORDERED.