NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000145
29-NOV-2018
08:04 AM**

NO. CAAP-17-0000145

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GILBERT V. MALABE and DAISY D. MALABE, Plaintiffs-Appellants,
v. ASSOCIATION OF APARTMENT OWNERS OF EXECUTIVE CENTRE,
by and through its Board of Directors, Defendant-Appellee,
and DOE DEFENDANTS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-2256)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Plaintiffs-Appellants, Gilbert and Daisy Malabe (the

**Malabes**) appeal from the Final Judgment (**Judgment**) entered by the

Circuit Court of the First Circuit (**Circuit Court**),[1] on February

17, 2017, in favor of Defendant-Appellee the Association of

Apartment Owners of Executive Centre (the **AOAO**). The Malabes

also challenge the Circuit Court's Order Granting Defendant

AOAO's Motion to Dismiss Complaint, filed December 13, 2016

(**Order Granting the AOAO's Motion**).

---

[1] The Honorable Rhonda A. Nishimura presided.

On appeal, the Malabes assert eight points of error,[2] contending that the Circuit Court erred in granting the motion to dismiss (1) as to the wrongful foreclosure claim, by failing to rule against the AOAO for various violations of statutory and procedural requirements in the 2010 Foreclosure Act, and (2) as to the Malabes' claims for unfair or deceptive acts or practices (**UDAP**), by failing to recognize the Malabes's standing to bring the action as well as their compliance with the statute of limitations.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Malabes' points of error as follows:

(1) The Malabes assert that the Circuit Court erred in failing to recognize the validity of their claim that the AOAO unlawfully invoked Hawaii Revised Statutes (**HRS**) § 667-5 (Supp. 2010) (repealed 2012)[3] in conducting a nonjudicial foreclosure on

---

[2] Although the Malabes identify eight separate points of error, their argument is structured, and can be fairly addressed, in accordance with the two points outlined above.

[3] The applicable enactment of HRS § 667-5 (amended in 2011 and repealed 2012) stated, in relevant part:

> **§ 667-5 Foreclosure under power of sale; notice; affidavit after sale.** (a) When a power of sale is contained in a mortgage, and where . . . any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the . . . person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State. The attorney shall:
> (1) Give notice of the . . . person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice
> (continued...)

2

their unit (the **Apartment**) at the Executive Centre in Honolulu for which the AOAO is the apartment owners' association. In the Complaint, the Malabes asserted that the "AOAO was not authorized or entitled to conduct a nonjudicial foreclosure or power of sale under Part I and the sale that occurred was unlawful and constituted a wrongful foreclosure." On appeal, the Malabes contend that HRS § 667-5 may be used only when a power of sale is contained in a mortgage or other governing document, and that because such a power of sale was not present in this case, the foreclosure was not permitted by Hawai'i law.

The Hawai'i Supreme Court has held that "[p]rior to its repeal in 2012, HRS § 667-5 authorized the non-judicial foreclosure of mortgaged property only '[w]hen a power of sale is contained in a mortgage.'" Santiago v. Tanaka, 137 Hawai'i 137, 154, 366 P.3d 612, 629 (2016) (emphasis added; footnote omitted) (citing HRS § 667-5(a) (repealed 2012)). In Santiago, the supreme court reiterated its prior holding that HRS § 667-5 "[did] not independently provide for a power of sale." Id. at

---

³(...continued)
  once in each of three successive weeks . . . ; and
  (2)  Give any notices and do all acts as are authorized or required by the power contained in the mortgage.
  . . . .
  (c) Upon the request of any person entitled to notice . . . , [the] attorney shall disclose the requestor the following information:
  (1)  The amount to cure the default, together with the estimated amount of the foreclosing mortgagee's attorneys' fees and costs . . . ; and
  (2)  The sale price of the mortgaged property once auctioned.

155, 366 P.3d at 630. Moreover, "'no state statute creates a right in mortgagees to proceed by non-judicial foreclosure; the right is created by contract.'" Id. (quoting Lee v. HSBC Bank USA, 121 Hawai'i 287, 292, 218 P.3d 775, 780 (2009)).

We recently recognized this holding, specifically in the context of apartment owner associations, in our analysis of the amended Chapter 667 and concluded that "[a] search of the legislative history, as well as the text, of HRS chapter 667 from the time [§ 667-5] was enacted in 1998 . . . reveals no legislative purpose or intent to grant any class of persons or entities with a power of sale over the property of others." Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, 143 Hawai'i 219, 225, 426 P.3d 443, 449 (App. 2018). Instead, HRS § 667-5 merely "authorize[d] a sale," where such a power is independently provided by an agreement between the parties. Santiago, 137 Hawai'i at 155, 366 P.3d at 630; see also Sakal, 143 Hawai'i at 225, 426 P.3d at 449 ("The Hawai'i Foreclosures statute sets forth the procedures for foreclosure in Hawai'i and does not create a right to foreclose...."). Accordingly, in order for an association to invoke this authority and utilize the procedures outlined in HRS § 667-5, there must have existed an agreement that independently provides for a power of sale.

Here, the AOAO did not argue that it had a power of sale under a mortgage or pursuant to its bylaws or some other agreement containing a power of sale. Instead, the AOAO asserts

4

that the plain text of HRS § 514B-146 (2006)[4] authorizes the AOAO to conduct a nonjudicial foreclosure on the Apartment under HRS § 667-5, without regard to a power of sale provision. HRS § 514B-146 provides an apartment owners' association with a priority lien over a unit in the case of any unpaid share of common expenses chargeable to that unit, which "may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667 . . . in like manner as a mortgage of real property." HRS § 514B-146(a) (amended 2012). The AOAO asserts that this constitutes a legislative grant of authority for it to use the nonjudicial foreclosure procedures in HRS § 667-5 and that a power of sale arises from this legislative authority.

We reject this argument as it disregards the plain language and legislative intent of both HRS § 667-5 and § 514B-146(a). See Sakal, 143 Hawai'i at 225-28, 426 P.3d at 449-52. As noted, HRS § 667-5 (repealed 2012) did not grant a power of sale but merely authorized use of certain nonjudicial *procedures* in order to effect a foreclosure only "[w]hen a power of sale [was] contained in a mortgage." HRS § 667-5(a) (repealed 2012);

---

[4]    HRS § 514B-146 (amended 2012), stated, in relevant part:

> [§ 514B-146] **Association fiscal matters; lien for assessments.** (a) All sums assessed by the association but unpaid for the share of the common expenses chargeable to any unit shall constitute a lien on the unit with priority over all other liens .
> . . .
> The lien of the association may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667, by the managing agent or board, acting on behalf of the association, in like manner as a mortgage of real property.

Santiago, 137 Hawai'i at 154, 366 P.3d at 629; Lee, 121 Hawai'i at 289, 218 P.3d at 777. As we have previously stated, the phrase "in like manner as a mortgage of real property"[5] was intended to clarify that associations could avail themselves of less burdensome procedures, but was not a grant of heretofore non-existent statutory powers of sale. Sakal, 143 Hawai'i at 227, 426 P.3d at 451 (analyzing the correlative and identical provision to HRS § 514B-146(a), prior to the 2012 amendments). Thus, here, as in Sakal, "we will not infer that the power to extrajudicially sell another person's property was granted, in the absence of a clear legislative act doing so." Id.

Accordingly, we conclude that the Malabes stated a cognizable claim for wrongful foreclosure against the AOAO for which some relief may be granted.[6] See Sakal, 143 Hawai'i at

---

[5] This language was removed from the statute in 2012 with the addition of an alternate power of sale process specifically for associations. See HRS § 514B-146(a) (Supp. 2017); see also Sakal, 143 Hawai'i at 228, 426 P.3d at 452 (Discussing the post-2012 statutory scheme, we explained that "[i]t is clear that, with the addition of a new part to HRS chapter 667 (Part VI) establishing an alternative power of sale process specifically for associations, which was modeled after but not identical to the process set forth in Part II HRS chapter 667, the reference to 'like manner as a mortgage of real property' became superfluous, if not confusing.").

[6] While the Circuit Court does not appear to have dismissed the wrongful foreclosure claim on the basis of the statute of limitations, we reject the AOAO's request for us to conclude that a cause of action for wrongful foreclosure is subject to the two-year statute of limitations provision under HRS § 657-7. See, e.g., Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 400, 391 P.3d 1, 7 (2017) (wherein the supreme court recognized the validity of a wrongful foreclosure claim in a complaint filed four years after the foreclosure sale at issue).

Additionally, because we conclude that the Malabes' claim for wrongful foreclosure may proceed on the basis that the AOAO was not authorized to conduct the foreclosure pursuant to HRS § 667-5 without a power of sale, we do not reach the Malabes' argument that the AOAO is bound by, and purportedly violated, the duties set forth in Ulrich v. Sec. Inv. Co., 35 Haw. 158 (Haw. Terr. 1939). See, e.g., Kondaur Capital Corp. v. Matsuyoshi, 136 Hawai'i 227, 240, 361 P.3d 454, 467 (2015) ("Ulrich requires mortgagees to exercise their right to non-judicial foreclosure under a power of sale in a manner that is
(continued...)

232, 426 P.3d at 456.  Therefore, the Circuit Court erred in granting the AOAO's motion to dismiss as to Count I.[7]

(2)  The Malabes also assert that the Circuit Court erred in dismissing their UDAP claim, contending that they are consumers for UDAP purposes, that the AOAO was engaged in trade or commerce by facilitating the real estate transaction of a nonjudicial foreclosure, and that the AOAO engaged in wrongful and deceptive conduct, resulting in the Malabes' loss of the Apartment.  In response, the AOAO argues, *inter alia*, that the Malabes' UDAP claim is time-barred under HRS § 480-24 (2008).[8]

---

[6](...continued)
fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the property.").

[7]    In the Answering Brief, the AOAO requests, if this court rejects their position that the relevant statutory scheme grants them a power of sale, that on remand the AOAO be permitted to present the AOAO's governing documents to the Circuit Court.  Unlike in Sakal, the AOAO's bylaws and/or other governing documents are not before us in this appeal.  See Sakal, 143 Hawai'i at 229-30, 426 P.3d 453-54.  On remand, the AOAO is free to establish that its bylaws and/or other governing documents confer a power of sale over the Apartment.

[8]    HRS § 480-24, provides, in relevant part:

§ 480-24  Limitation of actions.  (a) Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues, except as otherwise provided in subsection (b). . . . For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation.
(b)  The following shall toll the time for commencement of actions by the State under this chapter if at any time:
(1)    Any cause of action arising under this chapter accrues against any person, the person is out of the State . . . .
(2)    Any cause of action arising under this chapter accrues against any person, the person has petitioned for relief under the bankruptcy code . . . .
(3)    Any cause of action arising under this chapter accrues against any person, there is a criminal action pending which arises out of the same occurrence . . . .

7

HRS § 480-24(a) provides that "[a]ny action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues." We have previously recognized and adopted federal court rulings that "a cause of action for unlawful business practices accrues upon <u>occurrence</u> of alleged violation, rather than when plaintiff discovers the violation." <u>Reyes v. HSBC Bank USA, Nat'l Ass'n</u>, 2015 WL 3476371, *5 (Haw. App. May 29, 2015) (SDO) (emphasis added) (citing <u>McDevitt v. Guenther</u>, 522 F.Supp.2d 1272, 1289 (D. Hawai'i 2007)); <u>see</u> <u>also</u> <u>Kersh v. Manulife Fin. Corp.</u>, 792 F.Supp.2d 1111, 1122 (D. Hawai'i 2011); <u>Heejoon Chung v. U.S. Bank, N.A.</u>, 250 F.Supp.3d 658, 671-73 (D. Haw. 2017).

The Malabes' cause of action accrued on or about December 17, 2010, when the AOAO "collect[ed] [the] debt," *i.e.*, conducted the foreclosure sale and submitted the winning bid to purchase the Apartment. As the Malabes filed their Complaint on December 13, 2016, nearly six years after the purportedly unlawful foreclosure, their claims are time-barred by HRS § 480-24.

The Malabes argue that, regardless of the plain language of HRS § 480-24, equitable tolling applies "because [the] AOAO falsely represented that it was authorized to use § 667-5 to conduct the nonjudicial foreclosure" and thus the Malabes were "not aware of their claims."

We have recognized that equitable tolling may be available to toll the statute of limitations for a UDAP claim where it is based on allegations of fraudulent concealment. Reyes, 2015 WL 3476371, at *6. Fraudulent concealment "involves the actions taken by a liable party to conceal a known cause of action." Au v. Au, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981).

Here, the Complaint alleges that the AOAO "fraudulently concealed the wrong they were committing by implying, stating and/or misrepresenting that they were authorized to use [§ 667-5] and/or that they held a mortgage with a power of sale when in fact they did not." In other words, the Malabes allege that simply by virtue of relying on HRS § 667-5, the AOAO fraudulently concealed the Malabes' cause of action.

We reject this argument. As alleged in the Complaint, the AOAO "published notice that they would sell the Apartment at a public sale pursuant to Section 667-5." The Malabes cite no authority for the proposition that reliance on a statutory authority, even if that reliance later proves to be wrong, constitutes fraudulent concealment, and we find none. The Complaint contains no allegations that the AOAO concealed or misrepresented its use of HRS § 667-5. We decline to characterize the Malabes' later-developed, but cognizable and ultimately successful, legal theory as stating a claim for fraudulent concealment by the AOAO at the time the AOAO relied on HRS § 667-5. Therefore, we conclude that the Malabes failed to

9

allege fraudulent concealment sufficient to state a claim to equitable tolling of the statute of limitations on their UDAP claim.

Accordingly, we conclude that the Circuit Court did not err in dismissing Count II of the Malabes' Complaint.[9]

In accordance with the above, the Circuit Court's February 17, 2017 Judgment is vacated in part, with respect to the dismissal of Count I of the Complaint, and affirmed in part, with respect to the dismissal of Count II of the Complaint. This case is remanded to the Circuit Court for further proceedings.

DATED: Honolulu, Hawai'i, November 29, 2018.

On the briefs:

Steven K.S. Chung,
Michael L. Iosua,
Li Li,
(Imanaka Asato, LLLC),
for Plaintiffs-Appellants.

David R. Major,
James G. Diehl,
(Bays Lung Rose & Holma),
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[9] Because we affirm the dismissal of Count II as time-barred, we do not address the other arguments made concerning the Malabes's UDAP claim.

10